[PHILADELPHIA, APRIL, 1ST, 1839.]

## COLEMAN and Another *against* LUKENS.

#### IN ERROR.

1. An award made by referees appointed under the 6th section of the act of the 16th of June, 1836, "relating to reference and arbitration," cannot be enforced by attachment, or in any other mode than by such execution as may be issued on a judgment upon a verdict.

2. An amicable action on the case was entered, and all matters in variance in the cause between the parties, consisting of a claim by the plaintiff against the defendant, founded on a promissory note given by the defendant to the plaintiff for the payment of a certain sum of money, were referred to certain persons, who were to hear the parties, &c., and make trial of the iron which constituted the consideration of the note, by actual experiment: the reference to be considered as under the 6th section of the act of 16th June, 1836. The referees awarded that the note should be cancelled, that the defendant should pay a certain sum for a certain portion of the iron made use of by her, but not being of the quality contracted for, and that she should return to the plaintiff the remainder of the iron, not being of the quality contracted for, &c.: *Held*, that the award was bad: and a judgment entered upon it in the Court below was reversed.

THIS was a writ of error to the Court of Common Pleas of Chester County, to remove the record of an action on the case, brought by Edward Coleman and Louis Harford, executors of the will of William Coleman, deceased, to the use of Harriet Coleman, guardian of the minor children of James Coleman, deceased, against Rebecca W. Lukens.

The action in the Court below was entered under an agreement, which after stating the names of the parties, and that the action was in *case*, proceeded as follows :

" It is agreed that an amicable action be entered as above, and that all matters in variance in the cause between the parties, consisting of a claim by the plaintiffs against the defendant, founded on a promissory note, of which the following is a copy—

(Coleman *v.* Lukens.)

'Brandywine Iron Works, 4th Month 1st, 1837.

'$7023 50.

Four months after date I promise to pay to William Coleman, guardian, or order, at the Bank of Chester county, without defalcation, seven thousand and twenty-three 50-100 dollars, for value received.

(Signed)     REBECCA W. LUKENS,'

shall be referred to the final end and determination of Matthew Brooke Buckley, John P. Rutter, Joseph Whitaker, Charles Brooke, and Samuel Irwin, or any three of them agreeing, who shall meet at Brandywine Iron Works, aforesaid, hear the parties, their proofs, and allegations in relation to the contract between them, and make trial of the iron which constitutes the consideration of said note, by actual experiment. Rule ex parte, on ten days' notice. This reference to be considered as under the sixth section of the act of 16th June, 1836, entitled " An act relating to reference and arbitration."

(Signed)     W. H. DILLINGHAM, *Att'y for Plaintiff.*
           JOSEPH J. LEWIS, *Defendant's Attorney.*"

November 1, 1837.

Under this agreement the referees met, and three of them made the following report.

" We, the referees named in the within rule, met at Brandywine Iron Works, on the twelfth day of December, 1837, and proceeded to make trial of the iron, and hear the proofs and allegations of the parties; and after having made full trial of the iron, adjourned to meet at Congress Hall on the second day of January, at ten o'clock in the forenoon.

In accordance with the above adjournment, the referees again met at the time and place above mentioned, and proceeded to hear the further proofs and allegations of the parties; and after making full trial of the iron, and hearing all the testimony of the parties, we, the referees hereunto subscribed, do make this our final report and decision, and do hereby award the note given by Rebecca W. Lukens to William Coleman, guardian, or order, to be cancelled and returned by the plaintiffs to the defendant, which note amounting to seven thousand and twenty-three dollars fifty cents, was given in consideration of the said iron, and that inasmuch as Rebecca W. Lukens, the defendant, has made use of or changed the character of twenty-one tons, eleven hundred, three quarters and nine pounds of blooms or iron delivered by contract, but not being of the quality contracted for by the parties, we do award and decide that the said Rebecca W. Lukens is to pay to the plaintiffs in the case the sum of eighteen hundred and twenty-four dollars and fifty-four cents, (1824 54) for the said twenty-one tons, eleven hundred, three quarters and nine pounds; and also the said Rebecca W. Lukens to

(Coleman v. Lukens.)

return to the order of the said plaintiffs at the rail-road at Pennington's ware house, near Coatesville, forty-four tons, ten hundred two quarters and twenty-two pounds (44 t. 10 c. 2 qu. 22 lbs) of blooms now in the possession of the defendant, and being part of the iron contracted for by the parties, but not being of the quality contracted for, and unfit for the use it was bought for.    Given under our hands this third day of January, 1838.

M. Brooke Buckley,
Joseph Whitaker,
Charles Brooke."

To this report, the following exceptions were filed :—

" First. The referees misbehaved themselves in this case ; by one of them expressing an opinion on the merits of the case before the hearing of the parties ; by permitting the defendant to make a statement of facts to them, parts of which were unsupported by evidence.

Second. The referees decided erroneously : 1st. in awarding a return of the iron.   2d. In awarding the payment of eighteen hundred and twenty-four dollars and fifty-four cents only, for twenty-one tons, eleven hundred, three quarters and nine pounds, at eighty-nine dollars and fifty-five cents, and deducting the carriage, when there was no evidence that a large portion of it was not sold by the defendant for the market price.

Third. The referees awarded against law and evidence, and committed plain mistakes in matters of law and matters of fact, inasmuch as there was no evidence to prove that the iron was not equal to that contracted for ; inasmuch as no seasonable offer was made to return the iron to the plaintiffs, and inasmuch as the award involves the plaintiffs in the loss occasioned by the fall of iron."

These exceptions were overruled by the Court of Common Pleas on the 18th of June, 1838, the report confirmed, and judgment entered thereupon.

The plaintiffs then took this writ of error, and filed the following specifications :

" First. The award upon which judgment was rendered, exceeds the submission, inasmuch as the action was case upon a promissory note, and the submission expressly confined to ' matters in variance in the cause between the parties.'

Second. Under the submission the referees could only award, whether or not any thing was due upon the note, and if any thing, how much.

Third. The act of assembly under which this submission was made, gives to the award only the effect of a verdict of a jury ; and no judgment known to the law, could be rendered on such a verdict.

(Coleman v. Lukens.)

Fourth. The judgment in this case cannot be executed by any process known to the law.

. Fifth. The award, upon its face, is wrong in principle, for that it goes to rescind a contract partially ; and this in favour of the party who has put it out of her power to place the opposite party *in statu quo.*"

Mr. *Dillingham,* for the plaintiffs in error.

Between the date of the note upon which this action is founded, and its maturity, the suspension of specie payments occurred and prices fell. This presented a strong temptation to purchasers to get rid of their contracts, which should be regarded with jealousy by the Courts. Upon the face of this award it is obvious, that the defendant continued to work the iron while prices were good, and after a change of times, sought to return the balance at a loss of near $2000 to the plaintiffs in the mere depreciation. To permit this, would be flagrant injustice. Our errors assigned have reference—

First, to the *extent* of the submission.

Second, to the *statutory effect* and character of the *award* in this particular case.

Third, to the *principle* of this *award.*

First :—The action was *trespass on the case,* in *assumpsit,* upon a *promissory note ;* and it is to be considered in all respects, as though the note set out in this agreement had been formally declared upon. No form of pleading could raise any other issue in this cause, than whether the defendant was liable to pay the note, or any part of it : non-assumpsit, payment, set-off, or notice of special matter under the general issue, could present no other questions. And, the submission was expressly confined to "*matters in variance in the cause.*" It is not a submission of *all matters in controversy between the parties,* comprehending every *conceivable legal controversy ;* and it can be hardly necessary to refer to the cases which discriminate between this form of phrase, and that which limits the issue to the *precise matter in the suit.* 11 *Law Library,* 5. *Watson on Arbitration. Kyd on Awards,* 140. Any thing, therefore, which the referees have done, which could not be legally done in an action of assumpsit on a promissory note, *exceeded the terms of the submission.* It was not submitted to them to decide, whether this contract should be *rescinded ;* nor, whether it should be *divided ;* nor, *a fortiori,* whether if attempted to be *rescinded* or *divided,* the referees should make a *new contract* for the parties as to the *price* of the *iron used,* or *sold to others.* And yet, the referees have done all this : they have first divided the contract, and said it should not stand or fall *in solido* as the parties made it : they have next rescinded it in part, by ordering the plaintiffs to *return the note,* and the defendant to return *part of the iron ;* and last, they have fixed a different price on the iron used and sold by the defendant from that agreed upon by the parties.

(Coleman *v.* Lukens.)

In other words, they have assumed the case of the most latitudinarian bill in equity, and under this latitude, set all equitable principles at defiance. But, if the referees exceed the terms of their submission, their *act is void.* *Purdon's Digest,* 65. This is accurately and precisely laid down by Kyd, who traces the doctrine from the civil law, the great source of reference and awards. " The award must be according to the submission." *Kyd on Awards,* 139, 140, note, 5. By the express terms of this submission and the words of the section under which it was made, the referees were limited in their jurisdiction to the same grounds which arbitrators, under the compulsory arbitration law, would have occupied, and we have a late authority directly in point. " An award is not to be sustained where a verdict finding the same matter would not." *Bachman* v. *Reigart,* (3 *Penn. Rep.* 270.) In that case the court refused to enforce that part of the verdict which gave directions as to the enjoyment in common between the plaintiff and defendant of a certain alley, pump, and well, and set the whole aside. There have been decisions in this state, which seemed to give to referees under the old act of 1705, larger powers than a court and jury possess, but they were soon *repudiated.* This is fully explained in the *Notes to Kyd on Awards,* 380, note, *r.* This is not a case of *superfluity,* which might be set aside, and justice be done by sustaining the remainder. *Randal* v. *Randal,* (7 *East,* 81.) Whatever may have been the practice or decisions, under the act of 1705, the words of the law of 1836, are more restricted ; and, at all events, " when any thing is submitted to arbitration, the arbitrators cannot award contrary to law, because that is beyond their power, for the parties intend to submit to them only the legal consequences of their transactions and engagements." *Morgan* v. *Mather,* (2 *Ves. Jr.* 18.)

2d. This submission is expressly declared to be under the sixth section of the act of 16th June, 1836. That section prescribes that the award—" if made according to the submission of the parties, being approved of by the court, and entered upon the record, shall have the same effect, and shall be deemed and taken to be as available in law as the verdict of a jury ; and the party in whose favour such report shall be made, whether plaintiff or defendant, shall have *judgment thereon* and the *like process* for the *recovery thereof,* as on a *verdict* in an action commenced by such party." These words, as has been observed, are more *precise* than those of the act of 1705. Referees under this act can, certainly, have no greater powers than those of a court and jury. Their award is no *better,* nor higher ; nor can it be broader, or longer, or deeper, than a *verdict.* It remains, then, only to inquire, whether such a verdict as this would be good *in genere.* If so, we have no need for a court of equity, or special legislation to give chancery powers and chancery practice to our common-law courts. The long arm of a verdict may be stretched by the court to reach every imaginable necessity and every

(*Coleman v. Lukens.*)

possible evil. Every specific performance may be decreed and carried out by the *twelve chancellors*—conveyances ordered and enforced—contracts rescinded, and parties restored to the *statu quo*—and every thing and any thing, except, perhaps, a juror's foot, becomes the measure of justice. But this is the "*ad absurdum ;*" and, it has been repeatedly decided, cannot be done.

3d. This award is wrong in principle. Here was but one contract, *in solido,* and the rule with regard to such contracts is, that they cannot be "rescinded by one of the parties for the default of the other, unless both of them can be put *in statu quo* as before the contract." 2 *Com. on Con.* 57. "Where a contract is to be rescinded at all, it must be rescinded *in toto,* and the parties put *in statu quo.*" *Hunt* v. *Silk,* (5 *East,* 449.) This precise principle is repeated by each of the judges, ELLENBOROUGH, LAWRENCE, LE BLANC, who gave their opinions *seriatim* in that case, and Mr. Justice GROSS concurred. This is the doctrine in equity, as well as at law. If the ground of complaint was *fraud,* even, and the forum a court of *chancery,* under no circumstances would the contract be rescinded *partially.* "A deed cannot be set aside *in part* for fraud. If set aside at all, it must be set aside *in toto.*" 1 *Mad. Chan.* 262. This doctrine is well and fully illustrated by the case of *Middleton* v. *Lord Kenyon,* (2 *Ves. Jr.* 391, 408,) which decides, that "*this species of relief it is totally incompetent*" even for a court of equity to give :—"a deed cannot be set aside partially for fraud." The same doctrine has been always held in courts of law. *Kimdall* v. *Cunningham,* (4 *Mass. Rep.* 502.) *Conner* v. *Cunningham,* (15 *Mass. Rep.* 321.) *Thornton* v. *Wynn,* (12 *Wheaton's Rep.* 183.) *Turnpike Company* v. *The Commonwealth,* (2 *Watts,* 434.) *Borrekins* v. *Bevan,* (3 *Rawle,* 44.) The principle is even carried further by the chief justice in this last case. It may be again repeated, what was said by the defendant's counsel there, (*Chauncey, arguendo,*) "No case can be found in which the party can keep the article, where his claim or defence annuls the contract." The face of this award would warrant us in taking broader ground, and contending that there could be *no good defence in such a case.* It is not pretended that this is a case of *fraud,* or even, of *express warranty,* and without going the full extent of *Chandelor* v. *Lopus,* (Cro. *Jac.* 4,) for which the chief justice contended in *Borrekins* v. *Bevan,* according to every case, and by all rules, and even, if there had been an *express warranty,* it was *too late,* after defendant had *accepted* the iron, given her note, and *used twenty-two tons,* to complain. "In all cases it is to be remembered, that if a contract, voidable for inadequacy of consideration, *is confirmed* by the party, with his eyes open, (as the expression is,) it will not be relievable against." 1 *Madd. Chan.* 271. 1 *Chitty's Gen. Prac.* 126. *Street* v. *Blory,* (22 *Com. Law Rep.* 122; 2 *Barn. & Adol.* 456.) *Borrekins* v. *Bevan,* (3 *Rawle,* 44.) If, however, the plaintiff cannot be sustained on this

ground, the most the defendant could ask, should be an abatement in the price according to the principles laid down in *Steigleman* v. *Jeffries*, (1 *Serg. & Rawle*, 477.)

Mr. *Lewis*, for the defendant in error.

This submission, although under the act of 1836, is in an unusual form and more like a submission at common law than under the act. Much was intended to be confided to the referees as experienced manufacturers and qualified judges of the article which was the subject of the contract, and more than ordinary duty was required of them, preparatory to making an award. They were not only to hear the proofs and allegations of the parties, but to make trial of the iron which constituted the consideration, in whole, or in part, of the note in suit, by actual experiment. They did as they were required to do ; and after having made full trial of the iron, and investigated the case with extraordinary care, have made an award, which will, in their opinion, do exact justice between the parties. Under such circumstances, this court will not incline to set aside the award. Indeed it is the duty of courts to support awards, if they can do so by a fair construction. Every reasonable intendment should be made in their favour. *Watson on Arb.* 52. 11 *Law Lib.*

The first two errors assigned raise but one question: have the referees exceeded their authority? The authority of an arbitrator, in all voluntary references, is derived from the submission. It is limited, according to the canons of common sense, as well as of common law, by the terms of the submission. The same general requisite, that an award must be according to the submission, obtains under our act, by the express words of the act, and at common law. There is, therefore, a propriety in consulting the common law authorities on this subject. If this award would be held good at common law, it will not be deemed beyond the submission, under the act. Kyd, after laying down the general rule, that the award must be according to the submission, states the first branch of the rule to be, that " the award must not extend to any matter not comprehended within the submission." The authorities cited to illustrate this branch of his rule serve equally well to show, that an award requiring any thing to be done by either party within his power, with respect to the subject of the dispute, is good. Thus, where the submission was of all debts, trespasses, and injuries ; an award directing a release of all actions, debts, duties, and demands was considered as within the submission. *Kyd on Awards*, 145. 3 *Bulstr.* 312. A submission of the right and title of a manor, and of all actions and demands, was held to authorise an award, that one party should deliver to the other a deed of annuity, granting forty shillings a year out of the manor. *Kyd on Awards*, 45. So, if the submission be of all trespasses, and the award be, that one shall pay to the other ten pounds, and that he shall give bond for that sum, it

(Coleman *v.* Lukens.)

is good. *Ib.* 147. Where there was a submission of all matters in variance, an award of a dissolution of partnership was sustained. *Green* v. *Waring,* (1 *Bl. Rep.* 475.) An award, that one party shall enfeoff the other of an acre of land, and deliver up the title-deeds, or enter into bond and immediately after páy the money, is good. *Kyd on Awards,* 186. See also *Keen* v. *Goodwin, (Bunb.* 250.) *Lingood* v. *Eade,* (2 *Atk.* 501.) *Roberts* v. *Marriot,* (2 *Saund.* 190.) The cases decided in our own courts are of the same character. In *Kunkle* v. *Kunkle,* (1 *Dall.* 364,) there was an award of money to be paid by the defendant, on one side, and that a bond and mortgage in the loan-office should be taken up by the plaintiff, on the other. Upon exception taken, it was sustained, after argument by able counsel. The only material difference between that case and the present is, that there the award was partly in favour of the plaintiff, and partly of the defendant, while here it is wholly for the plaintiff. The only question deemed by the court worthy of consideration in that case, was, whether the award could be enforced. It was decided that it could, and the mode pointed out. That mode would be equally applicable here, and afford an efficacious remedy. In *Barde* v. *Wilson,* (3 *Yeates,* 149,) the award was for the payment of £12459 10*s.* 9*d.* and that upon the payment of £5380, the plaintiff should convey certain lands. In that case the award was under the act of 1705, and held good. An award for a sum of money, with stay of execution till a conveyance should be tendered, and also of money payable by instalments, has been sustained in Pennsylvania. *Nicholas* v. *Wolfsberger,* (5 *Serg. & Rawle,* 167.) *Geary* v. *Cunningham,* (10 *Serg. & Rawle,* 230.) The submission, in this case, was of all matters in variance in the cause. The iron given for the note was one of those matters. The award was of the iron, and, therefore, of the very subject of controversy; and within the letter, as well as the meaning, of the submission.

3. 4. The act prescribes, that the award made according to the submission of the parties, shall have the same effect as the verdict of a jury. It does not say that it shall have the same *form.* In practice, awards have never the form of verdicts. One of the great advantages of these domestic tribunals is, that they are able to decide upon the merits of a case, without being bound by technical rules. The act prescribes but one requisite for awards, and where that is observed assigns a *legal effect,* which courts are bound to give them. That legal effect is the same as a verdict, in all its essential properties, especially, as regards its conclusiveness. To require that an award should be in one form, or should not be in another, when the legislature have prescribed but one requisite— that it shall be according to the submission,—would be, to abandon the duty of construction, and to usurp the office of legislation. The courts are limited to the inquiry as to whether the submission has been exceeded, except in cases affected by fraud; and where it has

(Coleman v. Lukens.)

not been, it is their duty to enter the appropriate judgment on the award, and to frame the proper process for carrying it into execution. The remedy by attachment is indicated in *Kunkle* v. *Kunkle*, and no reasonable objection to its propriety or efficiency has been given. It is also prescribed in terms by the fifth section of the act of 1836, and if that section does not authorise its use for the purpose of enforcing awards under the sixth section, it does not forbid it; and, I am yet to learn, that the courts *may* not resort to such convenient means of compelling compliance with its judgments. Attachments for the non-performance of awards are not novel, but would seem, in England, to be of common occurrence. They are deemed in the nature of a civil execution, and are not granted as for contempts; 1 *Ba. Ab.* 285, *Rex* v. *Myers,* (1 *T. R.* 265,) *Rex* v. *Stokes,* (*Cowp.* 136,) and, therefore, are not within the letter or spirit of the act of 1809, " concerning contempts of courts." In *Geary* v. *Cunningham,* it is said, " arbitrators have powers as extensive as those of a chancellor, and may make a special award *in the nature of a decree* adapted to the particular circumstances of the case." How could such an award be enforced but by attachment? It is most certain, either that arbitrators have no such powers, or that their awards can be enforced. They can make no award in the nature of a decree, or, effect can be given to it. As a chancellor's decree, this award would be unexceptionable : how then can it be vicious, emanating from a tribunal with *"powers as extensive"* as his? The direction to restore the iron is not without a precedent. *Richards* v. *Summers,* (3 *Yeates,* 531.) No objection was taken there, that judgment could not be rendered on the verdict, although the case was ably argued by the ablest counsel.

5. The argument that the award goes to rescind a contract *partially,* is built upon an assumption, which is itself unfounded. The plaintiffs state the contract in their own way, and then, ground their argument on that statement. There is nothing on the paper-book or record to show what the contract was. What evidence has this court that the referees have assumed the right to rescind the contract either partially or totally? As far as appears, the award carries out to the very letter the intention of the parties in their contract. All matters in variance in the cause were submitted. How are you enabled to determine that the return of the iron was *not* one of them ? It is certain there was a contract to be considered and to be construed. It ought not to be presumed that the referees, instead of construing the contract, have rescinded it. On the contrary, every presumption should be made in favour of the validity of their acts. The doctrine of equitable set-offs as understood in Pennsylvania has application to cases of this character. 1 *Penn. Prac.* 60. *Steigleman* v. *Jeffries,* (1 *Serg. & Rawle,* 477.) *Shaw* v. *Badger,* (12 *Serg. & Rawle,* 275.) *Gogle* v. *Jacoby,* (5 *Serg. & Rawle,* 122.)

Mr. *Bell,* on the same side, cited *Gross* v. *Zerger,* (3 Yeates, 521.) *Nicholus.* v. *Wolfersberger,* (5 Serg. & Rawle, 167.) *Decamp* v. *Feay,* (5 *Serg. & Rawle,* 328.) *Coolbaugh* v. *Pierce,* (8 Serg. & Rawle, 418.)

Mr. *Meredith,* in reply.

1. The award is beyond the submission. The submission was of matters in variance *in the cause.* The action was on a promissory note, given by the defendant for the price of certain iron bought by her from the plaintiff. The agreement for reference stipulates, that the arbitrators may examine and test the quality of the iron sold. By law, if the iron were of quality inferior to that contracted for, the defendant was entitled in this action to a defalcation in the price. But the arbitrators have gone clearly beyond the submission, and awarded a partial rescision of the contract.

2. The award is void, because no judgment or execution can be had upon it. Whatever may have been the practice under the act of 1705, (which we deny to have extended to cover such an award as this,) this reference was expressly under the 6th section of the act of 1836, which is very far from being a transcript of that of 1705. It differs from the former act in a very material particular. It provides that on the award the party in whose favour it is given, shall have such judgment *and process,* as on a verdict. When it is shown that a *verdict* may be enforced by attachment, it may become necessary to consider other parts of this case.

3. The award finds certain facts, viz. : that there was a contract for purchase of iron ; a note given for the price ; the iron delivered, but of inferior quality ; part of it used and manufactured by the defendant ; and the rest retained by her. The referees have not found what defalcation the defendant is entitled to. On those facts, it was entirely illegal for any tribunal to rescind the contract, decree the iron which had been used to be paid for at a reduced price, the remainder to be returned to the plaintiff, and the note given for the price to be cancelled and delivered up. On the face of the award itself, the conclusion of the referees is unlawful, and, therefore, no judgment can be given on the award.

Per Curiam.—If the question stood on the act of 1705, for which the sixth section of the act of 1836 is a substitute, it would certainly be involved in obscurity by the imperfect evidence we have of the earlier practice and decisions. The judgment in *Kunckle* v. *Kunckle,* if the reference were indeed under the original act, went decisively beyond the letter which gave to an award pursuant to it, the effect of a verdict and no more ; no part of which is enforceable by attachment. It is probable, however, that the reference was at common law, for no allusion is made, in the report of the case, to the statute ; and the judge who ruled the point had in *Buckley* v.

(Coleman v. Lukens.)

*Durant*, (1 *Dall.* 130,)—a case expressly within the statute—very distinctly intimated an opposite opinion, for the abandonment of which, it is natural to suppose, some reason would have been given. Be that as it may, the act of 1836 is by no means a transcript of its predecessor; for it declares not only that the report shall have the effect of a verdict, but that the party in whose favour it shall be made, " whether plaintiff or defendant shall have *judgment* thereon, and *the like process* for the. recovery thereof as on a verdict in an action commenced by such party,"—a provision which is not in the original act; which looks to a judgment all on one side; and which indicates an execution to be the enforcing process as distinctly as if it were specified in terms; for no one ever heard of such a thing as the execution of a verdict and judgment by attachment. Without then questioning the propriety of the former practice or disturbing any thing done under it, we may establish a different one for the future, by giving the statute its natural and necessary interpretation. As to exceptions and enforcement, a report pursuant to it stands as a verdict; and the referees are consequently restrained, where they are not expressly empowered by the submission, from doing what a jury might not do. By the force of the submission, these referees might have made an allowance for the quality of the article by defalcation, but not by a partial rescision of the contract. Whether it is to be treated as entirely exploded, or as existing still for the purpose of conferring the same power on a jury, it is not our business to say ; at present we decide no more than that the judgment on the report cannot be sustained.

> Judgment reversed ; and the record remitted with a mandate to proceed.