## Coleman *against* Lukens.

After an award of referees, under a voluntary reference of a suit pending, has been set aside by the Supreme Court on a writ of error, and the case remanded for further proceeding, because the award was not according to the submission, the court below cannot, without consent of parties, send it back to the same referees, under the 7th Section of the Act of 16th June 1836.

The words, "mistake in fact," there used, mean a plain and obvious one, such as in arithmetical computation, or a mere clerical error.—" Mistake in law," means such as appears on the face of the award, or on facts not controverted; and these the court ought to specify.

Nor can such award be sent back, after judgment has been entered upon it.

THIS was an action brought by Edward Coleman and Louis Hurford, executors of William Coleman deceased, to the use of

[Coleman v. Lukens.]

Harriet Coleman, guardian of the minor children of James Coleman deceased, against Rebecca W. Lukens.

It was an amicable action, entered under an agreement, which, after stating the names of the parties, &c., and that the action was in *case*, proceeded as follows:

"It is agreed that an amicable action be entered as above, and that all matters in variance in the cause between the parties, consisting of a claim by the plaintiffs against the defendant, founded on a promissory note, of which the following is a copy,

"*Brandywine Iron Works, 4th Month 1st,* 1837.

"7023.50.  Four months after date I promise to pay to William Coleman, guardian, or order, at the Bank of Chester County, without defalcation, seven thousand and twenty-three $\frac{50}{100}$ dollars, for value received.     (Signed,)     "REBECCA W. LUKENS,"

shall be referred to the final end and determination of Matthew Brook Buckley, John P. Rutter, Joseph Whitaker, Charles Brooke, and Samuel Irwin, or any three of them agreeing, who shall meet at Brandywine Iron Works, aforesaid, hear the parties, their proofs and allegations in relation to the contract between them, and make trial of the iron, which constitutes the consideration of said note, by actual experiment.  Rule *ex parte*, on ten days' notice.  This reference to be considered as under the sixth Section of the Act of 16th June 1836, entitled "An Act relating to reference and arbitration."

Under this agreement, the referees met, and three of them made the following report:

"January 3, 1838.—Referees report, that they do award, that the note given by Rebecca W. Lukens, the defendant, to William Coleman, guardian, or order, be cancelled and returned by the plaintiffs to the defendant; which note, amounting to $7023.50, was given in consideration for the said iron; and that inasmuch as Rebecca W. Lukens has made use of, or changed the character of 21 tons 11 cwt. 3 qrs. 9 lbs. of blooms or iron delivered by contract, but not being of the quality contracted for by the parties, we do award and decide that the said Rebecca W. Lukens is to pay to the plaintiffs in this case, the sum of $1824.54 for the said 21 tons 11 cwt. 3 qrs. and 9 lbs.; and also, the said Rebecca W. Lukens to return to the order of said plaintiffs, at the said railroad at Pennington's Warehouse, near Coatesville, 44 tons 10 cwt. 2 qrs. and 22 lbs. of blooms, now in the possession of the defendant, and being part of the iron contracted for by the parties, but not being of the quality contracted for, and unfit for the use it was bought for."

To this report the following exceptions were filed:

First; The referees misbehaved themselves in the case; by one of them expressing an opinion on the merits of the case before the

[Coleman v. Lukens.]

hearing of the parties; by permitting defendant to make a statement of facts to them, parts of which were unsupported by evidence.

Second ; The referees decided erroneously ;—1st. In awarding a return of the iron. 2d. In awarding the payment of $1824.54 only for 21 tons 11 cwt. 3 qrs. and 9 lbs., at $89.55, and deducting the carriage, when there was no evidence that a large portion of it was not sold by the defendant for the market price.

Third ; The referees awarded against law and evidence, and committed plain mistakes in matters of law and matters of fact, inasmuch as there was no evidence to prove that the iron was not equal to that contracted for; inasmuch as no seasonable offer was made to return the iron to the plaintiffs, and inasmuch as the award involves the plaintiffs in the loss occasioned by the fall of iron.

These exceptions were overruled, the report confirmed, and judgment entered thereupon.

A writ of error was issued from the Supreme Court, and the judgment reversed ; and the record remitted, with a mandate to proceed, (see 4 *Whart.* 347). A declaration was then filed, and a rule to plead in three months, or judgment, entered. On the 14th June 1839, on motion of Mr Lewis, rule to show cause why this cause should not be referred back to the same referees, for such other proceedings therein as shall be expedient.

April 15, 1840, rule absolute. July 1, 1840, referees reported that they award in favour of the plaintiff, the sum of $4324.95. December 21, 1840, exceptions filed ; and Mr Dillingham asked for a rule to show cause why said award should not be set aside. Mr Lewis, of counsel for the defendant, opposed the rule ; and the court refused to grant the rule ; same day, report confirmed, *nisi.*

The following were the exceptions above referred to :

1. The arbitrators had no authority to act in the case; their power having ended with the first award.

2. The arbitrators having fixed the value of the iron in question, in their first award, could not properly adopt a new standard of value, without further evidence, or hearing the parties.

3. The award fixes the value of the iron at a different rate from that assumed in the first award ; when in truth and in fact there was no new evidence adduced ; and the arbitrators declined to hear anything further from the parties or their counsel.

4. The award, upon its face, is wrong in principle, when taken in connection with the former proceedings.

5. The proofs in the case showed that defendant, before giving the note, had full opportunity to test the quality of the iron which constituted the consideration of the note ; and, under such circumstances, it was wrong in principle to make an abatement from the price, for defect in quality.

6. The defendant actually rolled and manufactured seven to

[Coleman v. Lukens.]

eight tons of the iron before she gave the note in question; and continued to manufacture, use and sell one-third of the whole quantity, before giving notice of any defect in quality.

7. The space of three months elapsed, from the time of the contract for the sale of the iron, before the note was given; during which time the iron was all delivered, every opportunity given to test its quality by defendant, and it was actually tested, and no complaint made, until after a depreciation in the market.

Specification of errors:

1. The court below erred in sending the cause back to the same referees, for such other proceedings therein as shall be expedient.

2. In refusing to consider and decide the exceptions to the last report of referees.

*Dillingham* and *Meredith,* for the plaintiff in error, contended, that under the circumstances of the case, the court below were not authorized to send the award back to the same referees. It has been well settled, under the Act of 1705, that the court can only do this for the purpose of correcting a plain mistake, clerical, arithmetical, or formal. 3 *Serg. & Rawle* 133; 4 *Watts* 63. The Act of 16th June 1836, Sect. 7, is merely declaratory, and does not alter the law on the subject. By this Act, the award is to have the effect of a verdict; and, it might as well be pretended, that after a verdict and judgment have been set aside by reversal, and the cause remanded, it could be committed to the same jury, to alter or modify the verdict. After the reversal by the Supreme Court, the whole proceedings of the referees were annulled; their powers were extinct; and the court below could not revive them, without our consent. Besides, it is only while the exceptions are pending *sub judice,* that the court possesses the power to remit; it cannot be exercised after the award has been confirmed. The mode of doing it is likewise exceptionable. It is the duty of the court to make an order pointing out the mistake, and directing the referees what they are to do to correct it. They are not to take it back and reconsider it *ab initio;* or, if they do, they are bound to hear the parties.

*Lewis* and *J. R. Ingersoll, contra.*

The court below, after the reversal, stood in the same position as if they had themselves set aside the award, on exceptions, for a plain mistake in fact or in law. The provisions of the Act are mandatory; they are not discretionary. If they are, they are not examinable, by this court, on a writ of error. The referees, here, needed no instructions from the court below; their duty was pointed out in the published decision of this court. They cited, 1 *Burr.* 152; 5 *E. C. L.* 46; 7 *Serg. & Rawle* 429; *Dwarr. on Stat.* 712; 7 *Serg. & Rawle* 426.

[Coleman v. Lukens.]

The opinion of the Court was delivered by

KENNEDY J. — This was an amicable action instituted in the court below, by the plaintiffs in error against the defendant, for the purpose of recovering the amount of a note, dated the 1st of April 1837, whereby the defendant promised to pay, four months after the date thereof, the sum of $7023.50, to William Coleman, the intestate of the plaintiffs, or order, at the Bank of Chester County, without defalcation, for value received. By the agreement of the attorneys of the parties, which was made a rule of the court, *ex parte* on eight days' notice, all matters in variance, in the cause between them, were referred, under the sixth section of the Act of the 16th of June 1836, entitled " An Act relating to reference and arbitration," to the final end and determination of five referees named therein, or any three of them agreeing. The referees met in conformity to notice given under the rule, and after hearing the parties, three of them made and signed an award in writing, whereby they awarded that the note, which was shown to have been given in consideration of iron, sold and delivered by the intestate of the plaintiffs, in his lifetime, to the defendant, should be cancelled and returned by the plaintiffs to the defendant; and that the iron, delivered to the defendant, not being of the quality contracted for, she should return to the plaintiffs, at the railroad at Pennington's ware-house, near Coatesville, forty-four tons, ten hundred, two quarters, and twenty-two pounds, being part of the iron received by her and still in her possession unused; but for the residue, being 21 tons 11 cwt. 3 qrs. 9 lbs. which she had used, she should pay to the plaintiffs the sum of $1824.54. Exceptions were taken and filed in the court below to this award, but the court overruled them, and confirmed the award by entering judgment thereon. The plaintiffs thereupon removed the cause, and the judgment rendered therein, to this court, where the judgment was reversed, on the ground that the referees had, in making this award exceeded their authority, and had not made it according to the submission of the parties, as may be seen by a reference to the report of the case, (4 *Whart.* 347), and the record remitted to the court below, with a mandate to proceed in the case, so as to have a final determination made of it. After the return of the record to the court below, and after the plaintiff's counsel had filed a declaration in the cause for the amount of the note, and taken a rule on the defendant to plead, the defendant's counsel moved the court for " a rule to show cause why the case should not be referred back to the same referees, for such other proceeding therein as should be expedient," which was granted, and afterwards made absolute. The same three of the referees, who made the first award, reported a second award against the defendant, in favour of the plaintiffs, for $4324.95. The plaintiffs, however, being dissatisfied also with this award, filed exceptions thereto, and moved the court for a rule to show

III. — 6　　　　　D 2

[Coleman v. Lukens.]

cause why it should not be set aside; but the court refused the rule, and immediately confirmed the award by entering judgment upon it.   The error now complained of is, that the court referred the cause back to the same referees without and against the consent of the plaintiffs, for such other proceeding therein as should be expedient.

It is admitted by the counsel for the plaintiffs, that the court, before entering judgment upon an award, for the purpose of correcting an informality or a clerical mistake in it, may, and sometimes has recommitted the cause to the same referees, without the consent of the parties; but it is contended that this cannot, and never ought to be done, where the error is material, and such as affects the whole merits of the case and the principles upon which it ought to be determined.   See *Etter* v. *Edwards*, (4 *Watts* 65), and the cases there cited by Mr Justice Sergeant, in delivering the opinion of the court.   The same authorities have been referred to by the counsel of the plaintiffs here, and they certainly go to sustain fully the doctrine as laid down by the plaintiffs' counsel.   But then it is alleged, and indeed insisted on by the defendant's counsel, that the law, in this respect, has been changed by the 7th section of the Act of the 16th of June 1836, already mentioned, (*Purd. Dig.* of 1841, page 72), passed since the decisions made in the cases cited by the plaintiffs' counsel; and that, under it, the court below was authorized to refer the cause back as it did to the same referees; the words of this section are, " If upon exceptions filed to any award, it shall appear to the court, that the referees have made a mistake, in fact or in law, it shall be lawful for such court to refer the cause back to the same referees, for such further or other proceeding therein as shall be expedient." To this it has been answered, first, by the counsel for the plaintiffs, that the legislature did not intend by this Act to change or make the law on this subject different from what it was before; and as the counsel for the plaintiffs have laid it down and admit it to be; but meant merely, for the sake of greater certainty, to declare thereby what it was.   And, secondly, that no authority whatever is given thereby to the court to refer the cause back to the same referees, after it has rendered a judgment upon the award, confirming it; and especially after the term has gone by, in which it rendered judgment, and that judgment has been reversed upon writ of error, and the record been remitted to the court from the court above, with a mandate to proceed therein, so as to make a final end of the cause.   Now as to the first answer given by the plaintiffs' counsel, in regard to what was the intention of the legislature, it is very clear, that if they did not intend the section to be merely declaratory of what the law was, they did not intend, by the words, " mistake in fact or in law," to authorize the court to refer the cause back to the same referees, where they had misbehaved themselves so far as to mistake their

*[Coleman v. Lukens.]*

authority in making their award; or rather, in this case, to disregard entirely the submission of the parties, and to give an award, showing that they had mistaken the very principles or grounds upon which the case ought to have been decided. If the cause, in the first instance, had been tried by a jury, and they had given a verdict in the same terms of the first award, upon which the court had entered judgment, could it be supposed, after a writ of error and a reversal of such judgment, that upon a second trial of the cause, any of the jurors on the first trial, if objected to on that account by either party, ought to be permitted to sit as such again on the second trial? Certainly not, unless it can be shown that an erroneous opinion, once formed and expressed on the merits of a case, will not have any influence whatever upon the mind and judgment of the person when called on again to decide the same matter. But every day's experience shows that this, though perhaps barely possible with some persons, is not to be expected generally. And surely there is the same reason why the same referees should not be allowed to try the cause, in such case, a second time, without the consent of the parties, seeing the award is to have, at least, as great an effect as the verdict of a jury, that there is for the same jury's not being permitted to try it a second time, without the consent of the parties. The mistake in fact or in law, mentioned in the 7th Section of the Act, which, when made to appear to the court to exist, authorizes it to refer the cause back to the same referees, must be construed to have a meaning that will be reasonable, and such as will accord with the subject matter thereof, and the principles of the common law, so far as they are not clearly altered or changed by the act. Here the subject matter is the trial of a cause depending between the parties litigant, by means of referees, in place of a jury; but the law is perfectly well settled, that jurors must be *free* from all *suspicion* of *bias* or partiality. A juror, therefore, must not be of kin to either party, or have been an *arbitrator* on either side, or formerly a *juror* in the same cause, &c. 3 *Bl. Com.* 363. Having, then, a proper respect for the principles of the common law, it would seem that the mistake spoken of in the clause of the section under consideration, ought to be construed to mean a plain mistake, such as becomes, at once, perfectly obvious to every one, immediately upon its being pointed out or mentioned, so that there can be no diversity of opinion in regard to it: as, for instance, a mistake in adding up the items of an account, or placing inadvertently a debit on the credit, or a credit on the debit side of the account, or in subtracting the amount of the credits from that of the debits, &c. by making the difference either more or less than it ought to be, according to the ordinary rules of arithmetic; or, in short, any mistake of a mere clerical nature. And as regards the *mistake in law*, spoken of in the same clause, it would seem as if the legislature intended to embrace only such as shall appear on

[Coleman v. Lukens.]

the face of the award itself, or shall arise upon facts in the case not controverted or disputed. And in either case of mistake, whether it consist of fact or law, the court, in referring the cause back to the referees, in order to have it corrected, ought to point out and specify the mistake or error, and the correction which it shall be expedient to have made; and not leave the cause, in this respect, or any other, to be further proceeded in as the referees shall deem expedient, unless it be consented to by the parties.

Then as to the second answer, given by the counsel for the plaintiffs in error, to the defence taken by the defendant's counsel, that the 7th Section of the Act, recited above, authorized the court, in this case, to refer the cause back to the same referees, notwithstanding the court had, after exceptions filed, entered a judgment upon the award, confirming it, which was subsequently reversed upon a writ of error from this court. Here, it must be observed, that the words of the section are; "If, *upon* exceptions filed to any award, *it shall appear to the court* that the referees have made a mistake, in fact or in law, it shall be lawful for the court to refer the cause back to the same referees," &c. The plain meaning of the language here employed, is, that if the court, upon looking into the exceptions, after being filed, shall discover that the referees have made any plain mistake in fact or in law, it may, instead of setting the whole award aside, refer it back to the referees, so that they shall correct the mistake under the direction of the court. For, while the cause is pending before the court, on the exceptions filed, is the time, and indeed the only time, according to the express terms of the Act, at or during which the mistake, if any exists, must be made to appear to the court; otherwise it is the duty of the court to enter judgment on the award; which puts an end to all necessity for referring the cause back to the same referees. In this case it cannot be pretended that it appeared to the court below, upon the exceptions being filed, that the referees had made any mistake, either in fact or in law; so far from this being the case, the court were of opinion that the referees had acted correctly, and made their award according to the submission of the parties; and thinking so, entered judgment upon it; so that this is a case where not only the referees, but the court, were mistaken. It would be a very strained construction, if not a clear perversion of the language of the Act, in this particular, to say that the court below had power, under it, to refer the cause back to the same referees, after the judgment given by that court, confirming the award, had been reversed upon writ of error, and the record of the cause remitted to it, for the purpose of proceeding to try and determine the cause according to the rules of the common law; unless the parties, by consent, should agree to have it determined otherwise. Such a thing as giving the court this power, without the consent of the parties, to refer the cause back to the same referees, after the reversal of their judgment, confirming the

[Coleman v. Lukens.]

award upon writ of error, could, I think, never have been thought of by the legislature, and most certainly never was intended. It would be attended with anything but justice, to refer the cause back, to be decided by the same referees, who had acted in a manner altogether contrary to the nature and legal effect of the submission. Having done this once, they ought never to be trusted with the trial of the cause again.

The judgment is reversed, and the record remitted to the court below, with a mandate to proceed therein, according to the usual course, prescribed by law, for the trial of causes pending in that court.